**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES MUCKERHEIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-05331 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| INTERNATIONAL CENTER FOR | ) | |
| APPROPRIATE AND SUSTAINABLE | ) | |
| TECHNOLOGIES and RAVI | ) | |
| MALHOTRA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Until January 10, 2025, Plaintiff James Muckerheide served as Chief Financial Officer for Defendant International Center for Appropriate and Sustainable Technologies ("ICAST"). ICAST is located in Colorado, but Mr. Muckerheide worked remotely from Illinois for the entirety of his employment. He alleges that ICAST and its President, Defendant Ravi Malhotra, improperly fired him in retaliation for Mr. Muckerheide's investigation into potential fraud committed by ICAST related to government contracts. Before the Court today is Defendants' motion to dismiss Mr. Muckerheide's complaint for lack of personal jurisdiction. The Court finds that Mr. Muckerheide's status as a remote employee does not suffice to establish minimum contacts with the state. Accordingly, the Court grants Defendants' motion [12] and dismisses Mr. Muckerheide's complaint. The Court therefore also dismisses Defendant Malhotra's motion to stay proceedings [33] as moot.

**BACKGROUND**

**Allegations**

The following facts are drawn from Mr. Muckerheide's complaint, dkt. 1, and are presumed true for the purpose of resolving this motion.

Defendant ICAST is a non-profit organization based in Denver, Colorado that works, among other things, to help low-income families weatherize their homes and otherwise become more energy efficient. It "receives substantial funding from the U.S. Department of Energy ("DOE"), and related state sub-awards."*Id.* ¶ 6. On February 19, 2024, ICAST hired Mr. Muckerheide as its new Chief Financial Officer, knowing that he would be a remote employee telecommuting from Illinois. In his duties as Chief Financial Officer, Mr. Muckerheide oversaw ICAST's accounting and financial functions, including oversight. Mr. Muckerheide quickly identified several potential issues relating to ICAST's compliance with conditions of government grants. On or about January 9, 2025, Mr. Muckerheide attended an ICAST meeting with Mr. Malhotra. At the meeting, Mr. Muckerheide inquired about an unsubstantiated $80,000.00 expense from 2023 that had been charged to "startup expenditures." In response, Mr. Malhotra berated Mr. Muckerheide. The next day, January 10, 2025, ICAST abruptly fired Mr. Muckerheide.

**Procedural History**

On May 14, 2025, Mr. Muckerheide filed his complaint in the Northern District of Illinois, where he lives. On July 21, 2025, Defendants jointly filed the instant motion to dismiss for lack of personal jurisdiction over either party, dkt. 12, which they later corrected upon discovery of an accidental misrepresentation, dkt. 17-2 [hereinafter "Def. Br."]. The parties timely filed their response and reply briefs, and the motion became fully briefed as of September 12, 2025. Then, on November 6, 2025, ICAST informed the Court that it had filed for chapter 7 bankruptcy, and it requested that all proceedings be stayed pursuant to 11 U.S.C. § 362(a)(1). Dkt. 27. The Court stayed all proceedings indefinitely with respect to ICAST, and temporarily with respect to Mr. Malhotra, until it could be determined whether the bankruptcy automatic stay applies to him as well. Dkt. 28. Mr. Malhotra subsequently filed a motion to indefinitely stay all proceedings as to him, dkt. 33, which is now fully briefed. On January 28, 2026, this Court directed the parties to file a joint status report indicating the

parties' positions on whether the bankruptcy automatic stay impacts the Court's ability to resolve Defendants' pending motion to dismiss. Dkt. 41. Defendants argued that the automatic stay should not preclude this Court from ruling on the pending motion, and Mr. Muckerheide did not object to adjudicating the motion prior to the lifting of the automatic stay. Dkt. 42.

## LEGAL STANDARD

A motion to dismiss under Rule 12 (b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Curry v. Revolution Lab'ys, LLC,* 949 F.3d 385, 392 (7th Cir. 2020). Although the plaintiff bears the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss based on the submission of written materials, a plaintiff need only make a prima facie showing of personal jurisdiction. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.' " *Curry*, 949 F.3d at 393 (citation omitted).

## DISCUSSION

### I.     Application of the Automatic Stay

Except under certain circumstances, a bankruptcy petition "operates as a stay, applicable to all entities, of the… continuation… of a judicial… proceeding against the debtor[.]" 11 U.S.C. § 362(a)(1). The purpose of the stay is "to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable [claims] liquidation procedure for all creditors." *In re Lutheran Home & Servs. for the Aged, Inc.*, 670 B.R. 874, 881 (Bankr. N.D. Ill. 2025) (quoting *Healthfirst v. Martha Washington Hosp. (In re Martha Washington Hosp.)*, 157 B.R. 392, 395 (N.D. Ill. 1993)); *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (similar). Here, adjudicating the pending motion to dismiss would facially constitute a continuation of a judicial proceeding against the debtor. However, it is also clear that resolving the

– 3 –

motion will not have any impact on the debtor's estate, which suggests that the automatic stay should not apply. *See In re Mayer*, 16 F.3d 1215 (5th Cir. 1994) ("The automatic stay provisions of § 362… do not apply to an act or proceeding that does not affect property of the debtor's estate."); *In re Rook*, 102 B.R. 490, 492 (Bankr. E.D. Va. 1989), *aff'd*, 929 F.2d 694 (4th Cir. 1991) (similar). Indeed, there is no negative outcome here for ICAST—either a lawsuit against it will be dismissed (an obviously positive outcome) or else it will have certainty about whether an already-filed lawsuit will continue (still a slightly positive outcome). As such, reasons of judicial efficiency and fairness to all parties would counsel in favor of resolving this motion now.

The Court asked the parties to state their positions as to the propriety of adjudicating this motion despite the automatic stay. Dkt. 41. In their response, Defendants represented that they would prefer to have the motion decided sooner rather than later, and Mr. Muckerheide did not object. Dkt. 42. Additionally, Mr. Malhotra reported that he had conferred with the bankruptcy trustee, who "indicated that because ICAST's estate will not be impacted by this Court's ruling on the Motion to Dismiss for Lack of Personal Jurisdiction (as it is procedural in nature), no relief from stay is required for a ruling on the personal jurisdiction motion." *Id.* at *2. Given the parties' positions, Mr. Malhotra's representations of the trustee's position, and the fact that this proceeding cannot affect the debtor's estate and can only benefit the debtor, the Court rules that the automatic stay does not apply to Defendants' pending motion to dismiss and that the motion is therefore ripe for adjudication.

## II.    Personal Jurisdiction

If a court is to wield the power to adjudicate a case, the Fourteenth Amendment's Due Process Clause requires that the court have personal jurisdiction over each of the defendants. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). For an Illinois federal court to have personal jurisdiction over a non-resident, an Illinois state court must also have such jurisdiction. *United Financial Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 890 (N.D. Ill. Oct. 18, 2002) (St. Eve, J.).

(quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)). Because there is no operative difference between the Illinois Constitution and the federal rules on personal jurisdiction, the Court need only address a "single due process inquiry." *See United Financial Mort. Corp.*, 245 F. Supp. at 891 (internal citation omitted).

There are two types of personal jurisdiction—general and specific—but only specific personal jurisdiction is at issue here. Def. Br *10–12; *see generally* dkt. 20 [hereinafter "Pl. Resp."]. There are three essential requirements to establish specific jurisdiction: (1) the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state; (2) the alleged injury must arise from or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with the traditional notions of fair play and substantial justice. *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.,* 938 F.3d 874, 878 (7th Cir. 2019).

The crux of ICAST's argument is that employing a remote worker in Illinois, without more, does not establish that ICAST personally availed itself of the privilege of conducting activities in the State of Illinois. Def. Br. *5. ICAST concedes that it employed Mr. Muckerheide, who lived in Illinois and performed work for ICAST from Illinois. *Id.* at *2–3. ICAST also does not contest that it paid employment taxes in Illinois, or that it required Mr. Muckerheide to abide by the terms of an ICAST Employee Handbook for Illinois employees. Dkt. 19 ¶¶ 3, 10 [hereinafter "Decl."]; *see generally* dkt. 24 [hereinafter "Def. Reply"]. It nevertheless argues that minimum contacts with the State of Illinois have not been established because: (1) ICAST did not *require* Mr. Muckerheide to live in Illinois, or in any way seek him out because of his location; (2) ICAST did not benefit in any way from Mr. Muckerheide's location in Illinois; and (3) there is no evidence that ICAST made any sales or otherwise conducted any business in Illinois during the term of Mr. Muckerheide's employment. Def. Br *2–3.

In support of its position, ICAST points to a large body of caselaw, albeit mostly from other circuits, in which courts have found that simply employing a remote worker in a state does not subject

the employer to personal jurisdiction in that state. *See, e.g., Presidio Holdings Inc. v. People Driven Tech.*, Inc., No. 1:24-cv-02912, 2025 WL 947946, at *5 (N.D. Ill. Mar. 30, 2025) (Chang, J.); *Tripp v. Ascentage Pharma Grp. Int'l*, No. CV 22-5934 (KM) (JBC), 2023 WL 5425506, at *4 (D.N.J. Aug. 23, 2023); *Carpenter v. S. Airways Express*, No. 2:21-CV-568, 2021 WL 5937749, at *6 (S.D. Ohio Dec. 16, 2021); *Serv. Experts, LLC v. Otte*, 609 F. Supp. 3d 1183, 1192 (D. Kan. 2022). A through-line among these cases is that an employee's unilateral decision of where to live, without more, does not establish that his or her employer personally availed itself of the privileges of conducting business in the forum state. ICAST's relationship with Mr. Muckerheide fits into the pattern established by these cases.

Mr. Muckerheide responds by focusing on the particulars of the Illinois Long-Arm Statute, 735 ILCS 5/2–209, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* But, as a general matter, Mr. Muckerheide's analysis misses the forest for the trees. As he correctly observes, "the Illinois Long Arm Statute… is co-extensive with the limits set by the Due Process Clause so the statutory and constitutional inquiries merge." Pl. Resp. *4 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003)). As noted above, the Court need only address a "single due process inquiry." *See United Financial Mort. Corp.*, 245 F. Supp. at 891.

Mr. Muckerheide offers several arguments for why ICAST personally availed itself of the privileges of conducting business in Illinois, but the Court does not find them persuasive. Mr. Muckerheide first points to the fact that he signed his employment contract while in Illinois and was required to abide by ICAST's Employee Handbook for Illinois employees. But it is long recognized that "contracting with an out-of-state party" cannot, by itself, "establish automatically sufficient minimum contacts in the other party's home forum." *Northern Grain Mkting, LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (nearly identical language). Moreover, "a defendant's relationship to the forum state 'must arise out of contacts that the

defendant *himself* creates with the forum State' and… the relationship must be 'with the forum State itself' and not merely with 'persons who reside there.' *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 820 (7th Cir. 2021) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 284. Here, Mr. Muckerheide's employment contract and his agreement to abide by the Illinois version of the Employee handbook are relationships with a person rather than a state, of the exact sort that the Supreme Court has rejected as a basis for establishing minimum contacts. *Burger King Corp.*, 471 U.S. at 478.

Mr. Muckerheide's other arguments fare no better. He points to the fact that ICAST is registered with the Illinois Secretary of State and has a registered agent in Illinois, but that has no bearing on the case. Merely being registered with the Secretary of State does not establish that ICAST purposefully availed itself of Illinois; and, even if it did, Mr. Muckerheide has not alleged that his injury stems from this particular contact. *See Walden*, 571 U.S. at 284. Similarly, Mr. Muckerheide's allegation that ICAST sought grants from the State of Illinois prior to his employment, even if true, does nothing to establish a link between such grants and Mr. Muckerheide's injury. Decl. ¶ 8; Pl. Resp. *2.

In short, Mr. Muckerheide has failed to allege that ICAST personally availed itself in any way of the privileges of conducting business in this state. Even taking all his allegations as true, and drawing every inference in his favor, there simply is no evidence of forum-related activities from ICAST that led to Mr. Muckerheide's injury. The Court therefore finds that it does not have personal jurisdiction over ICAST.

Finally, the case for personal jurisdiction over Mr. Malhotra is even more attenuated. ICAST at least employed Mr. Muckerheide and paid Illinois taxes; none of that is true of Mr. Malhotra in his individual capacity. The Court therefore also finds that it lacks personal jurisdiction over Mr. Malhotra.

In reaching this conclusion, the Court wishes to emphasize that it offers no ruling on the substance of Mr. Muckerheide's complaint. The alleged behavior is quite concerning, and the Court does not believe this to be a frivolous complaint. But a court cannot operate when it does not have jurisdiction. As personal jurisdiction is lacking, this Court has no power to compel Defendants to submit to a judgment. Accordingly, the Court must dismiss Mr. Muckerheide's complaint, in its entirety.

## CONCLUSION

The Court grants Defendants' motion [12] and dismisses Mr. Muckerheide's complaint without prejudice. Mr. Muckerheide may filed an amended complaint within 21 days if he can allege facts sufficient to establish personal jurisdiction over either Defendant or both; however, any consideration of such an amended complaint may be stayed owing to ICAST's bankruptcy. Finally, the Court dismisses Mr. Malhotra's pending motion to stay the proceedings [33] as moot.

**IT IS SO ORDERED.**

Date: 3/31/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

– 8 –